Evan J. Smith
BRODSKY SMITH
Two Bala Plaza, Suite 805
Bala Cynwyd, PA 19004
Telephone:     610.667.6200
Facsimile:      610.667.9029
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ZHAOQUN KONG,<br><br>               Plaintiff,<br><br>     v.<br><br>THE EXONE COMPANY, JOHN F. HARTNER, S. KENT ROCKWELL, JOHN IRVIN, GREGORY F. PASHKE, LLOYD A. SEMPLE, WILLIAM STROME, ROGER THILTGEN, BONNIE K. WACHTEL, TEXAS MERGER SUB I, INC., TEXAS MERGER SUB II, LLC, and DESKTOP METAL, INC..<br><br>               Defendants. | Case No.:<br><br>COMPLAINT FOR:<br><br>(1)  Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2)  Violation of § 20 (a) of the Securities Exchange Act of 1934<br><br><br>DEMAND FOR JURY TRIAL |

Plaintiff, Zhaoqun Kong ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1.    Plaintiff brings this action against The ExOne Company ("ExOne" or the "Company"), and the Company's Board of Directors (the "Board" or the "Individual Defendants") for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of efforts to sell the Company to Desktop Metal Energy Corporation ("Parent" or "Desktop Metal") through merger vehicles Texas Merger Sub I, Inc. and Texas Merger Sub II, LLC ("Merger Subs" and together with ExOne, the Board, and Parent, the

"Defendants") to enjoin an upcoming stockholder vote on a mixed cash and stock proposed transaction valued at approximately $575 million (the "Proposed Transaction").

2.     The terms of the Proposed Transaction were memorialized in an August 12, 2021, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement").   Under the terms of the Merger Agreement, ExOne will become an indirect wholly-owned subsidiary of Parent, a subsidiary of the Desktop Metal.   ExOne public stockholders will receive, in exchange for each share of ExOne Class A share they own, $17.00 in shares of Desktop Metal common stock and $8.50 of cash for each share of ExOne common stock owned.

3.     Thereafter, on September 15, 2021, Desktop Metal filed a Registration Statement on Form S-4 (the "Registration Statement") with the SEC in support of the Proposed Transaction.

4.     The Proposed Transaction is unfair for a number of reasons.   Significantly, the Registration Statement describes an insufficient process in which the Board failed to conduct a market check for potentially interested third parties.

5.     Moreover, the Registration Statement reveals that the Proposed Transaction fails to contain either a "collar" provision to protect minority stockholders from fluctuations in Desktop Metal's share price.

6.     Furthermore, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders.   For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

7.     In violation of the Exchange Act, on September 15, 2021, Defendants caused to be filed the materially deficient Registration Statement with the SEC in an effort to Plaintiff, to vote

in favor of the Proposed Transaction.  The Registration Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for ExOne and Desktop Metal, provided by ExOne and Desktop Metal to the Board's financial advisor Stifel Nicolaus & Company, Incorporated ("Stifel"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Stifel, if any, and provide to the Company and the Board.

8.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

9.     Plaintiff is a citizen of Missouri and, at all times relevant hereto, has been an ExOne stockholder.

10.     Defendant ExOne develops, manufactures, and markets three-dimensional (3D) printing machines, 3D printed and other products, materials, and services to industrial customers in the United States, Germany, and Japan.  ExOne is incorporated under the laws of the State of Delaware and has its principal place of business at 127 Industry Boulevard, North Huntingdon, PA 15642.  Shares of ExOne common stock are traded on the Nasdaq Stock Exchange under the symbol "XONE."

11.     Defendant John F. Hartner ("Hartner") has been a Director of the Company at all relevant times.  In addition, Hartner serves as the Company's Chief Executive Officer ("CEO").

12.     Defendant S. Kent Rockwell ("Rockwell") has been a director of the Company at all relevant times.

13.    Defendant John Irvin ("Irvin") has been a director of the Company at all relevant times.

14.    Defendant Gregory F. Pashke ("Pashke") has been a director of the Company at all relevant times.

15.    Defendant Lloyd A. Semple ("Semple") has been a director of the Company at all relevant times.

16.    Defendant William Strome ("Strome") has been a director of the Company at all relevant times.

17.    Defendant Roger Thiltgen ("Thiltgen") has been a director of the Company at all relevant times.

18.    Defendant Bonnie K. Wachtel ("Wachtel") has been a director of the Company at all relevant times.

19.    Defendants identified in ¶¶ 11 - 18 are collectively referred to as the "Individual Defendants."

20.    Defendant Desktop Metal manufactures and sells additive manufacturing solutions for engineers, designers, and manufacturers in the Americas, Europe, the Middle East, Africa, and the Asia- Pacific. Desktop Metal was founded in 2015 and is headquartered in Burlington, Massachusetts. Shares of Desktop Metal common stock are traded on the NYSE under the symbol "DM."

21.    Defendants Merger Subs are both wholly owned subsidiaries of Desktop Metal created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

22.    This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.

23.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

24.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's has its principal place of business located in the District.

## SUBSTANTIVE ALLEGATIONS

### Company Background

25.     ExOne develops, manufactures, and markets three-dimensional (3D) printing machines, 3D printed and other products, materials, and services to industrial customers in the United States, Germany, and Japan. The Company manufactures and sells 3D printing machines that serves direct and indirect applications, including components and tools to produce a component; and offers pre-production collaboration and print products for customers. It also supplies associated materials comprising consumables and replacement parts; and other services, such as training and technical support services. The Company markets its products under the ExOne brand name. The company was founded in 2005 and is headquartered in North Huntingdon, Pennsylvania.

26.     The Company reported positive financial results in its most recent Press Release for the First Quarter 2021 Financial Results. For example, the Company reported First quarter revenue of $13.0 million, including record quarterly recurring revenue of $8.1 million, up 15% year-on-year as well as Total liquidity increased to $137.3 million.

27.     Speaking on the results, Defendant CEO Hartner commented in the May 17, 2021 Press Release, "'The ExOne team is pleased to report record levels of both recurring revenue and machine order backlog, which shows the strength of our product offerings, adoption model, and momentum… We look forward to entering the post-pandemic period with new tailwinds as

manufacturers look to de-risk supply chains and improve the sustainability of their products with new designs that require our industrial 3D printing solutions to execute.'"

28.     The financials and optimism are not an anomaly, but rather, are indicative of a trend of continued success and future potential success by ExOne.  Clearly, the Company is likely to have tremendous future success and should command a much higher consideration than the amount contained within the Proposed Transaction.

29.     Despite this potential, the Individual Defendants have caused ExOne to enter into the Proposed Transaction.

***The Flawed Sales Process***

30.     As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants, and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible no matter the price.

31.     Notably, the Registration Statement indicates that neither the Board, nor anyone on their behalf, conducted a market check for potentially interested third parties at any point throughout the sales process. In fact, the only other potentially interested third party mentioned by The Registration Statement contacted the Company of its own accord.

32.     In addition, while the Registration Statement indicates that a Transaction Committee was established "with respect to the negotiations with representatives of Desktop Metal," the Registration Statement fails to give adequate information regarding this committee, including its independence and its specific role in the sales process. The lack of information regarding the Transaction Committee is especially worrying considering that the Registration Statement also seems to give conflicting information that the negotiations regarding the Proposed Transaction were headed up by the CEO, CFO, and General Counsel of the Company, rather than by the Transaction Committee.

33.     Furthermore the Registration Statement does not disclose adequate information as to why the Board agreed to the merger consideration without the protections of a collar mechanism to keep the merger consideration within a reasonable range.

34.     In addition, the Registration Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Desktop Metal, whether this agreement differed from any other agreement with potentially interested third parties, including those not specifically mentioned by the Registration Statement, and if so in what way, and if the terms of any such agreements included "don't-ask, don't-waive" provisions or standstill provisions, and if so, the specific conditions, if any, under which such provisions would fall away.

35.     It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

***The Proposed Transaction***

36.     On August 11, 2021, Desktop Metal issued a press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **BOSTON & NORTH HUNTINGDON, Pa.**--(BUSINESS WIRE)-- Desktop Metal, Inc. (NYSE: DM) ("Desktop Metal") and The ExOne Company (NASDAQ: XONE) ("ExOne") announced today they have entered into a definitive agreement pursuant to which Desktop Metal will acquire all of the issued and outstanding shares of ExOne common stock. Under the terms of the agreement, ExOne shareholders will receive $8.50 in cash and $17.00 in shares of Desktop Metal common stock for each share of ExOne common stock, for a total consideration of $25.50 per share, representing a transaction value of $575 million, subject to a collar mechanism as described below and implying a 47.6% premium to the closing price of ExOne's common stock on August 11, 2021 and a 43.9% premium based on the 30-day average closing price of ExOne common stock. The transaction value also implies an acquisition multiple of 6.4x 2021 consensus revenue estimates for ExOne.
>
> "We are thrilled to bring ExOne into the DM family to create the leading additive manufacturing portfolio for mass production," said Ric Fulop, Founder and CEO of Desktop Metal. "We believe this acquisition will provide customers with more choice as we leverage our complementary technologies and go-to-market efforts to drive continued growth. This transaction is a big step in delivering on our vision of accelerating the adoption of additive manufacturing 2.0."

"We are excited to join forces with Desktop Metal to deliver a more sustainable future through our shared vision of additive manufacturing at high production volumes," said John Hartner, CEO of ExOne. "We believe our complementary platforms will better serve customers, accelerate adoption of green technologies, and drive increased shareholder value. Most importantly, our technologies will help drive important innovations at meaningful production volumes that can improve the world."

More and more businesses turning to additive manufacturing expect solutions that address all of their requirements across speed, cost, resolution, and part size. The acquisition of ExOne extends Desktop Metal's product platforms with complementary solutions to create a comprehensive portfolio combining throughput, flexibility, and materials breadth while allowing customers to optimize production based on their specific application needs. By combining ExOne's direct sales force with Desktop Metal's global distribution network of over 200 channel partners, the combined company will enable broader access to additive manufacturing solutions for businesses of all sizes while delivering increased materials innovation to provide customers with more choice and drive new application discovery.

"Today is a game-changing moment for the additive manufacturing community," said Kent Rockwell, Chairman of ExOne. "I see incredible opportunity for our customers in working with Desktop Metal and look forward to supporting this new and combined business."

**Transaction Details:**
Under the terms of the agreement, at closing, ExOne stockholders will receive total consideration of $575 million, consisting of $192 million in cash consideration and $383 million in share consideration of Desktop Metal common stock, subject to a collar mechanism on the share consideration component described below.

The share consideration component is subject to an exchange ratio adjustment if Desktop Metal's 20-day volume weighted average price (VWAP) 3 days prior to closing is between $7.94 and $9.70. If the 20-day VWAP exceeds the higher end of that range, the exchange ratio will be fixed at 1.7522 per share, and if the 20-day VWAP goes below the lower end of that range, the exchange ratio will be fixed at 2.1416 per share. The final number of Desktop Metal shares estimated to be issued on a fully diluted basis will range between approximately 39.5 million and 48.3 million shares at closing. Upon closing of the transaction, current Desktop Metal shareholders will own between 85 and 88% and current ExOne shareholders are expected to own between 12 and 15% of the combined company, respectively.

Kent Rockwell, ExOne's Chairman of the Board of Directors and largest shareholder, has entered into a Support Agreement in which he will vote his 4.2 million shares in favor of the transaction.

The transaction, which has been unanimously approved by the Board of Directors of ExOne, is expected to close in the fourth quarter of 2021, subject to the approval of ExOne shareholders and satisfaction of customary closing conditions, including applicable regulatory approvals.

### *Potential Conflicts of Interest*

37.     The breakdown of the benefits of the deal indicate that ExOne insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of ExOne.

38.     Notably, Company insiders, currently own large, illiquid portions of Company stock that will be exchanged for the merger consideration upon the consummation of the Proposed Transaction. However, while the Registration Statement provides the following, it fails to disclose an accounting of how much merger consideration the below holdings will be exchanged for upon the consummation of the Proposed Transaction.

| Name of Beneficial Owner | Number | Percent |
|---|---|---|
| **Directors, Nominees and Named Executive Officers** | | |
| S. Kent Rockwell[1] | 4,229,943 | 18.9% |
| Paul A. Camuti | 4,000 | * |
| John F. Hartner[2] | 315,586 | 1.4% |
| John Irvin[3] | 219,665 | * |
| Rick Lucas[4] | 125,234 | * |
| Gregory F. Pashke[5] | 28,250 | * |
| William F. Strome | 33,500 | * |
| Roger Thiltgen | 39,073 | * |
| Bonnie K. Wachtel | 36,000 | * |
| Douglas D. Zemba[6] | 126,860 | * |
| ll Current Directors/Executive Officers as a group (11 persons) | 5,219,376 | 23.4% |
| **ertain Beneficial Owners** | | |
| ARK Investment Management LLC[7] | 2,375,334 | 10.6% |
| Nikko Asset Management Americas, Inc.[8] | 1,457,036 | 6.5% |

39.     Moreover, upon the consummation of the Proposed Transaction, the Registration Statement indicates that each outstanding Company stock option, restricted share, or other equity

award will be canceled and converted into the right to receive certain consideration according to the merger agreement as follows:

**Non-Employee Director Equity Award Summary Table**

| Non-Employee Directors | Unvested Restricted Stock Awards[#] | Value of Unvested Restricted Stock Awards($)[1] |
|---|---|---|
| S. Kent Rockwell | 5,000 | $ 118,700 |
| Paul A. Camuti | 4,000 | $ 94,960 |
| John Irvin | 5,000 | $ 118,700 |
| Gregory F. Pashke | 5,000 | $ 118,700 |
| William F. Strome | 5,000 | $ 118,700 |
| Roger Thiltgen | 5,000 | $ 118,700 |
| Bonnie K. Wachtel | 5,000 | $ 118,700 |

40.     In addition, certain employment agreements with certain ExOne executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff as follows:

**Golden Parachute Compensation**

| Named Executive Officer[1] | Cash ($)[2] | Equity ($)[3] | Perquisites/ Benefits ($)[4] | Total ($)[5] |
|---|---|---|---|---|
| John F. Hartner | 1,462,500 | 4,670,092 | 32,352 | 6,164,944 |
| Chief Executive Officer | | | | |
| Douglas D. Zemba | 800,000 | 1,753,379 | 32,352 | 2,585,731 |
| Chief Financial Officer & Treasurer | | | | |
| Rick Lucas | 735,000 | 1,370,930 | 32,352 | 2,138,282 |

41.     The Registration Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

42.     Thus, while the Proposed Transaction is not in the best interests of ExOne, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Registration Statement***

43.     On September 15, 2021, the ExOne Board and Desktop Metal caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

44.     Specifically, the Registration Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Registration Statement fails to disclose:

    a.  The specific reasoning as to why neither the Board, nor anyone on their behalf, conducted a market check for potentially interested third parties at any point throughout the sales process;

    b.  Adequate information regarding the Transaction Committee's specific powers and responsibilities during the sales process;

    c.  Adequate information as to why the Board agreed to the merger consideration without the protections of a collar mechanism to keep the merger consideration within a reasonable range;

    d.  Whether the confidentiality agreements entered into by the Company with Desktop Metal differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties if any, and if so, in what way;

    e.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and

potentially interested third parties throughout the sales process, including Desktop Metal, would fall away;

f.  Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning ExOne's and Desktop Metal's Financial Projections*

45.    The Registration Statement fails to provide material information concerning financial projections for ExOne and Desktop Metal provided by ExOne and Desktop Metal management and relied upon by Stifel in its analyses.  The Registration Statement discloses management-prepared financial projections for the Company and Parent which are materially misleading

46.    The Registration Statement should have, but fails to provide, certain information in the projections that ExOne and Desktop Metal management provided to the Board and Stifel. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

47.    With regard to the ExOne Projections prepared by ExOne management, the Registration Statement fails to disclose material line items for the following metrics:

    a.  All specific assumptions and reasoning underlying them upon which the Projections are based; and

    b.  Adjusted EBITDA, including all underlying necessary inputs and assumptions, including specifically: net income (loss) (as calculated under GAAP), interest expense, provision (benefit) for income taxes, depreciation and amortization, equity-based compensation and other expense—net.

48.    With regard to the Desktop Metal Projections prepared by Desktop Metal management, the Registration Statement fails to disclose material line items for the following metrics:

    a.  All specific assumptions and reasoning underlying them upon which the Projections are based; and

    b.  Adjusted EBITDA, including all underlying necessary inputs and assumptions, including specifically: EBITDA, stock-based compensation, warrant expenses and transaction costs associated with acquisitions.

49.    The Registration Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in all projection sets.

50.    This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

51.    Without accurate projection data presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Stifel's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Stifel*

52. In the Registration Statement, Stifel describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

53. With respect to the *Selected Precedent Transactions Analysis - ExOne*, the Registration Statement fails to disclose the following:

    a. The specific dates on which the Precedent Transactions closed; and

    b. The value of each of the Precedent Transactions analyzed.

54. With respect to the *Discounted Cash Flow Analysis - ExOne*, the Registration Statement fails to disclose the following:

    a. ExOne's unlevered projected cash flows utilized;

    b. The terminal values of ExOne's projected cash flows calculated;

    c. The specific inputs and assumptions used to determine the utilized range of exit multiples of ExOne's estimated 2025 Revenue of 3.0x to 5.0x;

    d. The specific inputs and assumptions used to determine the utilized discount rate range of 11.5% to 13.5%;

    e. ExOne's weighted average cost of capital; and

    f. The specific inputs and assumptions used in the decision to apply the comparable company capital structure adjusted for a small-cap size premium of 2.2%.

55. With respect to the *Research Price Targets - ExOne*, the Registration Statement fails to disclose the following:

    a. The specific price targets for ExOne analyzed; and

    b. The identity of the research analysts who generated the analyzed price targets.

56.     With respect to the *Discounted Cash Flow Analysis – Desktop Metal*, the Registration Statement fails to disclose the following:

   a.   Desktop Metal's unlevered projected cash flows utilized;

   b.   The terminal values of Desktop Metal's projected cash flows calculated;

   c.   The specific inputs and assumptions used to determine the utilized range of exit multiples of Desktop Metal's estimated 2025 Revenue of 4.0x to 6.0x;

   d.   The specific inputs and assumptions used to determine the utilized discount rate range of 11.5% to 17.5%;

   e.   Desktop Metal's weighted average cost of capital; and

   f.   The specific inputs and assumptions used in the decision to apply the Capital Asset Pricing Model utilized for this analysis.

57.     With respect to the *Research Price Targets – Desktop Metal*, the Registration Statement fails to disclose the following:

   a.   The specific price targets for Desktop Metal analyzed; and

   b.   The identity of the research analysts who generated the analyzed price targets

58.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

59.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public ExOne stockholder.  As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

60.     Plaintiff repeats all previous allegations as if set forth in full herein.

61.     Defendants have disseminated the Registration Statement with the intention of soliciting stockholders, including Plaintiff, to vote their shares in favor of the Proposed Transaction.

62.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of her name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

63.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

64.     The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

65.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

66.     The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

67.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

### SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

68.     Plaintiff repeats all previous allegations as if set forth in full herein.

69.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

70.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

71.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of ExOne's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration Statement was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

72.     The Individual Defendants acted as controlling persons of ExOne within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause ExOne to engage in the wrongful conduct complained of herein.   The Individual Defendants controlled ExOne and all of its employees.  As alleged above, ExOne is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act

WHEREFORE, Plaintiff demands injunctive relief, in his favor, and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D.     Granting such other and further relief as this Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: September 21, 2021

**BRODSKY SMITH**

By: _____

Evan J. Smith
Two Bala Plaza, Suite 805
Bala Cynwyd, PA 19004
Telephone:    610.667.6200
Facsimile:     610.667.9029

*Counsel for Plaintiff*

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Zhaoqun Kong

**DEFENDANTS**

The ExOne Company, et al.

**(b)** County of Residence of First Listed Plaintiff   Boone Cty., NC
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Westmoreland Cty., PA
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Marc L. Ackerman, Brodsky & Smith, LLC, 2 Bala Plaza, Ste 805, Bala Cynwyd, PA 19004, 610-667-6200

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1   U.S. Government Plaintiff
- [ ] 2   U.S. Government Defendant
- [ ] 3   Federal Question *(U.S. Government Not a Party)*
- [ ] 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY**   **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane   [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal | [ ] 376 Qui Tam (31 USC |
| [ ] 130 Miller Act | [ ] 315 Airplane Product   Product Liability | | 28 USC 157 | 3729(a)) |
| [ ] 140 Negotiable Instrument | Liability   [ ] 367 Health Care/ | | | [ ] 400 State Reapportionment |
| [ ] 150 Recovery of Overpayment | [ ] 320 Assault, Libel &   Pharmaceutical | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| & Enforcement of Judgment | Slander   Personal Injury | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers'   Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted | Liability   [ ] 368 Asbestos Personal | | [ ] 835 Patent - Abbreviated | [ ] 460 Deportation |
| Student Loans | [ ] 340 Marine   Injury Product | | New Drug Application | [ ] 470 Racketeer Influenced and |
| (Excludes Veterans) | [ ] 345 Marine Product   Liability | | [ ] 840 Trademark | Corrupt Organizations |
| [ ] 153 Recovery of Overpayment | Liability   **PERSONAL PROPERTY** | | [ ] 880 Defend Trade Secrets | [ ] 480 Consumer Credit |
| of Veteran's Benefits | [ ] 350 Motor Vehicle   [ ] 370 Other Fraud | **LABOR** | Act of 2016 | (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle   [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards | | [ ] 485 Telephone Consumer |
| [ ] 190 Other Contract | Product Liability   [ ] 380 Other Personal | Act | | Protection Act |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal   Property Damage | [ ] 720 Labor/Management | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | Injury   [ ] 385 Property Damage | Relations | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ |
| | [ ] 362 Personal Injury -   Product Liability | [ ] 740 Railway Labor Act | [ ] 862 Black Lung (923) | Exchange |
| | Medical Malpractice | [ ] 751 Family and Medical | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** | Leave Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights   **Habeas Corpus:** | [ ] 790 Other Labor Litigation | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting   [ ] 463 Alien Detainee | [ ] 791 Employee Retirement | | [ ] 895 Freedom of Information |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment   [ ] 510 Motions to Vacate | Income Security Act | **FEDERAL TAX SUITS** | Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/   Sentence | | [ ] 870 Taxes (U.S. Plaintiff | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | Accommodations   [ ] 530 General | | or Defendant) | [ ] 899 Administrative Procedure |
| [ ] 290 All Other Real Property | [ ] 445 Amer. w/Disabilities -   [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party | Act/Review or Appeal of |
| | Employment   **Other:** | [ ] 462 Naturalization Application | 26 USC 7609 | Agency Decision |
| | [ ] 446 Amer. w/Disabilities -   [ ] 540 Mandamus & Other | [ ] 465 Other Immigration | | [ ] 950 Constitutionality of |
| | Other   [ ] 550 Civil Rights | Actions | | State Statutes |
| | [ ] 448 Education   [ ] 555 Prison Condition | | | |
| | [ ] 560 Civil Detainee - | | | |
| | Conditions of | | | |
| | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1   Original Proceeding
- [ ] 2   Removed from State Court
- [ ] 3   Remanded from Appellate Court
- [ ] 4   Reinstated or Reopened
- [ ] 5   Transferred from Another District *(specify)*
- [ ] 6   Multidistrict Litigation - Transfer
- [ ] 8   Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Section 27 of the Exchange Act (15 U.S.C. § 78aa)

Brief description of cause:
Violations of the Exchange Act

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ 

CHECK YES only if demanded in complaint:
JURY DEMAND:   [x] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE
9/21/2021

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)   Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)   County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)   Attorneys.**  Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.   Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked**.  (See Section III below; NOTE: federal question actions take precedence over diversity cases.)**

**III.   Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.   Nature of Suit.**  Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.   Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.   Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.   Requested in Complaint.**  Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.   Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.

UNITED STATES DISTRICT COURT
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

### DESIGNATION FORM

*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 5409 Steeplechase Dr, Columbia, MO 65203 _____

Address of Defendant: _____ 127 Industry Boulevard, North Huntingdon, PA 15642 _____

Place of Accident, Incident or Transaction: _____ 127 Industry Boulevard, North Huntingdon, PA 15642 _____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? — Yes ☐  No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? — Yes ☐  No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court? — Yes ☐  No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? — Yes ☐  No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 09/21/2021 _____ Must sign here _____ 56294

*Attorney-at-Law / Pro Se Plaintiff*      *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.**    *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☐ 7. Civil Rights
☐ 8. Habeas Corpus
☑ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
    *(Please specify):* _____

**B.**    *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
    *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Marc L. Ackerman _____, counsel of record *or* pro se plaintiff, do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☑ Relief other than monetary damages is sought.

DATE: 09/21/2021 _____ Sign here if applicable _____ 56294

*Attorney-at-Law / Pro Se Plaintiff*      *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

|  |  |  |
|---|---|---|
| ZHAOQUN KONG | : | CIVIL ACTION |
|  | : |  |
| v. | : |  |
|  | : |  |
| THE EXONE COMPANY, et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.          ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court.  (See reverse side of this form for a detailed explanation of special
management cases.)          (X)

(f) Standard Management – Cases that do not fall into any one of the other tracks.     ( )


| 9/21/2021 | Marc Ackerman | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| (610) 667-6200 | (610) 667-9029 | mackerman@brodskysmith.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

## Civil Justice Expense and Delay Reduction Plan
### Section 1:03 - Assignment to a Management Track

(a)        The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)        In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management.  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)        The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)        Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)        Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

## SPECIAL MANAGEMENT CASE ASSIGNMENTS
### (See §1.02 (e) Management Track Definitions of the
### Civil Justice Expense and Delay Reduction Plan)

Special Management cases will usually include that class of cases commonly referred to as "complex litigation"  as that term has been used in the Manuals for Complex Litigation.  The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985.  This term is intended to include cases that present unusual problems and require extraordinary treatment.  See §0.1 of the first manual.  Cases may require special or intense management by the court due to one or more of the following factors:  (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition.  It may include two or more related cases.  Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues.  See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.